TODD KIM
Assistant Attorney General
GUSS GUARINO
Trial Attorney, CO Bar No. 21864
Guss.Guarino@usdoj.gov
LAURA BOYER
Trial Attorney, CO Bar No. 56764
laura.boyer@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section
999 18th St., South Terr. 370
Denver, CO 80202
TEL: (303) 229-7256
FAX: (303) 844-1350
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT D. SHAVER,<br><br>Defendant. | Case No. _____<br><br>**UNITED STATES' COMPLAINT (Lot 15)** |

# COMPLAINT

Plaintiff United States of America, by the authority of the Attorney General of the United States and at the request of the United States Department of the Interior, ("United States") acting on its own behalf and as trustee for the Colorado

River Indian Tribes ("Tribes" or "CRIT") files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to the federal common law of trespass and ejectment to remedy Defendant Scott D. Shaver's ("Defendant Shaver's") intentional and unauthorized occupancy and use of lands that the United States owns in trust for the benefit of the Tribes and that are subject to federal authority, supervision, and restrictions against alienation.

2. Defendant Shaver has unlawfully occupied a tract of land held by the United States in trust for the Tribes for decades without paying any rent. By his persistent, unlawful occupancy, Defendant Shaver has unlawfully deprived the Tribes of their right to occupy and use that land. Over the course of many years, Defendant Shaver has been repeatedly informed regarding his trespass and has been ordered to cease and desist. Yet Defendant Shaver continues to occupy and use the subject trust land, even after repeated notifications and warnings.

3. The United States seeks all just and proper remedies against Defendant Shaver, including, but not limited to, the following: declaratory relief, damages or mesne profits for the unlawful occupancy and use of the properties, and for restoration and remediation of all damage and degradation; ejectment; and all costs and fees associated with this action.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of and parties to this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201-2202.

5. Venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b), because the subject property is located in the District, all of the alleged acts occurred in the District, and Defendant Shaver resides in the District.

## PARTIES

6. Plaintiff is the sovereign United States of America suing on its own behalf and in its capacity as trustee for the Tribes.

7. Defendant is an individual who occupies, controls, and refuses to relinquish the property in question. On information and belief, since sometime in 2000, Defendant Shaver has unlawfully occupied, used, and controlled property held in trust by the United States: Lot 15 of the Rymer subdivision, situated in a portion of Section 23 and 24, Township 4 South, Range 23 East, San Bernardino Base and Meridian, within the Colorado River Indian Reservation, Riverside County, California (the "Subject Property").

## GENERAL ALLEGATIONS

**A. The Lands at Issue**

8. CRIT is a federally-recognized Indian tribe residing on the Colorado River Indian Reservation ("Reservation"), established by Congress in 1865. Act of March 3, 1865, 13 Stat. 541, 559. In its current configuration, the Reservation straddles the Colorado River ("River") with land on both the Arizona and

California sides of the River. Originally, the entire Reservation was located to the east, or Arizona side of the River. The Reservation was subsequently expanded, however, by Executive Orders dated November 22, 1873; November 16, 1874; May 15, 1876; and November 22, 1915.

9. In 1964, Congress affirmed the CRIT Reservation as established and expanded by Executive Order providing that "unallotted lands of the . . . Reservation . . . are . . . tribal property held in trust by the United States for the use and benefit of [CRIT]." *Act to fix the beneficial ownership of the Colorado River Indian Reservation located in the States of Arizona and California*, Pub. L. No. 88-302, 78 Stat. 188, 189 (April 30, 1964) (the "1964 Act"). The 1964 Act authorized the Secretary to approve leases of lands on the Reservation. The 1964 Act initially held in abeyance the Secretary's leasing authority on lands on the California side of the River until such time that those lands were ". . . *determined* to be within the reservation." *Id.* at 189 (emphasis added).

10. On January 17, 1969, the Interior Solicitor Edward Weinberg issued a legal opinion in which he determined that the western boundary of the Reservation included a portion of Riverside County, California. Edward Weinberg, U.S. Dep't of the Interior, Opinion Letter on Western Boundary of the Colorado River Indian Reservation (Jan. 17, 1969), *as reprinted in* Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs 1917-1974 at Vol. II 2096, https://thorpe.law.ou.edu/sol_opinions/p2076-2100.htm.

The Secretary of the Interior, Stewart Udall, concurred in the opinion and instructed the Director of the Bureau of Land Management ("BLM") to suspend certain surveys and reinstate others to serve as the line of the western boundary of the Reservation. Exhibit 1, Memorandum from the Secretary of the Interior to BLM Director (January 17, 1969).

11. In 1970, Secretary of the Interior, Walter Hickel, confirmed Secretary Udall's "final, official and unqualified declaration that the 'Benson Line' was the proper location of the western boundary of the Reservation." Exhibit 2, Letter from the Secretary of the Interior to CRIT Chairman (June 2, 1970).

12. The Bureau of Indian Affairs ("BIA") then published a notice in the Federal Register that extended the Colorado River Reservation Indian leasing program to "those lands which the Secretary of the Interior has determined, pursuant to the Act of April 30, 1964 (78 Stat. 188), to be within the Colorado River Reservation." Certain California Lands Determined to Be Within Colorado River Reservation, 35 Fed. Reg. 18,051 (Nov. 25, 1970).

13. The Subject Property, identified administratively by the BIA as "Lot 15 of the Rymer subdivision" is situated in a portion of Section 23 and 24, Township 4 South, Range 23 East, San Bernardino Base and Meridian, Riverside County, California. The Subject Property is within the exterior boundaries of the lands determined to be within the Colorado River Indian Reservation as noticed in the Federal Register on November 25, 1970.

14. After the November 25, 1970 Federal Register notice, the BIA began approving permits to occupy the Reservation lands located west of the Colorado River, including the permits for the Subject Property.

**B.   Defendant Shaver's Unauthorized Occupation and Use of Subject Property**

15. On September 20, 1979, the CRIT issued Colorado River Permit (Homesite) No. WB 62 (R) ("Permit 62") to Arthur E. Fonceca, Dale L. Cexton, Donald L. Pierce, and Charles L. Word for Lot 15 of the Rymer subdivision. The Permit was approved by the Acting Superintendent of the Colorado River Agency on December 4, 1979 and was for the "use and occupancy by the Permittee . . . and his immediate family only, for single family residential occupancy." (See Exhibit 3, September 20, 1979 Permit 62).

16. Permit 62 was subsequently modified on March 20, 1992, whereby Donald Pierce was removed as a co-lessee of Lot 15 and the lot was split into two parts, with the southern part remaining as Permit WB 62(R) in the name of Charles Word and the northern part of the lot to be leased to Donald and Barbara Pierce under Permit WB 364 (R). The rental rate for each lot was fixed at $2,925.00 per annum. (See Exhibit 4,  March 20, 1992 Modification).

17. No modification, assignment, or quitclaim document has been executed with respect to Arthur E. Fonceca or Dale L. Cexton.

18. Colorado River Permit (Homesite) WB 364 (R) ("Permit 364") was approved by the Acting Superintendent of the Colorado River Agency on March

United States' Complaint – Shaver, Lot 15                                                                 6

16, 1992, leasing half of Lot 15 to Donald and Barbara Pierce. Permit 364 was for the "use and occupancy by the Permittee . . . and his immediate family only, for single family residential occupancy." (See Exhibit 5, March 16, 1992 Permit 364).

19. The lessees made rental payments on both permits for 1992 and partial rental payments for 1993. (See Exhibit 6, 1992 Payment Record for Permit 364; Exhibit 7, January 28, 1993 Receipt for Partial Payment by Charles Word; and Exhibit 8, January 11, 1993 Receipt for Partial Payment by Donald Pierce). These were the last rental payments made by any lessee for either lot.

20. Article 5 of Permit 62 and Permit 364 states that "the Permittee . . . covenants and agrees to pay . . . the amount herein . . . or as may be adjusted from time to time."

21. On June 24, 1994, CRIT sent Charles Word a letter via certified mail stating that he was in violation of Article 5 of the Permit due to failure to pay full rent of $2,925.00 per annum for 1993 and 1994 and requiring him to pay back rent and interest at 12% per annum in the amount of $5,469.20 to cure the violation. The letter stated that he had ten days to show cause as to why Permit 62 should not be cancelled for failure to pay. (See Exhibit 9, June 24, 1994 Letter from CRIT to Charles Word). Charles Word and the others failed to pay but continued to occupy the Subject Property.

22. Also on June 24, 1994, CRIT sent Donald Pierce a letter via certified mail stating that he was in violation of Article 5 of the Permit due to failure to pay

full rent of $2,925.00 per annum for 1993 and 1994 and requiring him to pay back rent and interest at 12% per annum in the amount of $5,409.60 to cure the violation. The letter stated that he had ten days to show cause as to why Permit 364 should not be cancelled for failure to pay. (See Exhibit 10, June 24, 1994 Letter from CRIT to Donald Pierce; and Exhibit 11, June 24, 1993 Bill to Donald Pierce). Mr. and Mrs. Pierce and the others failed to pay but continued to occupy the Subject Property.

23.   By letter dated November 30, 1995, CRIT notified Charles Word that he was in violation of Permit 62 for failure to pay full rent for the years 1993, 1994 and 1995, and required him to pay back rent and interest at 12% per annum in the amount of $7,850.00 to cure the violation. Mr. Word was again given 10 days to show cause as to why Permit 62 should not be cancelled for failure to pay. (See Exhibit 12, November 30, 1995 Letter from CRIT to Charles Word). Mr. Word and the others failed to pay but continued to occupy the Subject Property.

24.   Also by letter dated November 30, 1995, CRIT notified Donald Pierce that he was in violation of Permit 364 for failure to pay full rent for the years 1993, 1994 and 1995, and required him to pay back rent and interest at 12% per annum in the amount of $7,800.00 to cure the violation. Mr. Pierce was again given 10 days to show cause as to why Permit 364 should not be cancelled for failure to pay. (See Exhibit 13, November 30, 1995 Letter from CRIT to Donald Pierce). Mr. and Mrs. Pierce and the others failed to pay but continued to occupy the Subject Property.

25. Article 18 of the Permits state:

> should Permittee default in the payment of any installment or rent or any other sum when due . . . the Secretary . . . may declare this permit forfeited by giving Permittee written notice thereof, and upon such forfeiture, Permittee shall have no further rights or interest hereunder or in or to the permitted premises or any part thereof, and Permitter may re-enter and take possession of the permitted premises and all buildings and improvements thereon, and may cast Permittee and all persons claiming under the permit from the premises.

26. Article 25 of the Permits states that the "permit and the covenants, conditions, and restrictions hereof shall extend to and be binding upon the successors, heirs, assigns, executors, and administrators of the parties hereto."

27. On August 9, 1996, the BIA Phoenix Area Director sent a letter to Charles Word terminating the Permit "effective immediately" in accordance with Article 18 of Permit 62 for failure to pay rent for 1993, 1994, 1995, and 1996. The Area Director demanded payment of $10,775.00 in back rent plus interest at twelve percent per annum and stated that Mr. Word had Thirty (30) days from the receipt of the letter, but not later than September 12, 1996, to remove personal property from the permitted area. (See Exhibit 14, August 9, 1996 Letter from BIA to

1  Charles Word). Mr. Word and the others failed to pay but continued to occupy the
2  Subject Property.

3    28. On August 9, 1996, the BIA Phoenix Area Director sent a letter to
4  Donald Pierce terminating the Permit "effective immediately" in accordance with
5  Article 18 of Permit 364 for failure to pay rent for 1993, 1994, 1995, and 1996.
6  The Area Director demanded payment of $10,725.00 in back rent plus interest at
7  twelve percent per annum and stated that Mr. Pierce had Thirty (30) days from the
8  receipt of the letter, but not later than September 12, 1996, to remove personal
9  property from the permitted area. (See Exhibit 15, August 9, 1996 Letter from BIA
10 to Donald Pierce). Mr. and Mrs. Pierce and others failed to pay but continued to
11 occupy the Subject Property.

12   29. In approximately 1995 or 1996 Charles Word sold "all assets and
13 property liabilities to the property located at Rymer WB62 15Top" to Donald
14 Pierce for $20,000. (See Exhibit 16, Signed Statement of Charles Word).

15   30. On May 30, 2000, Dallas and Barbara Shaver purchased whatever
16 interest Donald and Barbara Pierce purported to have in Lot 15 of the Rymer
17 subdivision for $75,000. Pursuant to the sale, Donald and Barbara Pierce
18 transferred whatever interest they purported to own in Lot 15 of the Rymer
19 subdivision to Dallas and Barbara Shaver's son, Defendant Shaver, by a quitclaim
20 deed dated April 7, 2000. (See Exhibit 17, Agreement, Cashier's Check, and
21 Quitclaim Deed).

United States' Complaint – Shaver, Lot 15            10

31. On September 1, 2010, CRIT posted a notice at the top half of Lot 15 of the Rymer subdivision that the lease to Charles Word under Permit 62 had been terminated on August 9, 1996, and the occupant had not entered into a valid lease and was in trespass and needed to contact the CRIT Attorney General to make arrangements to stay on the property lawfully. (See Exhibit 18, September 1, 2010 Posted Notice Top Half Lot 15). Defendant Shaver, and/or others, did not comply.

32. Also on September 1, 2010, CRIT posted a notice at the bottom half of Lot 15 of the Rymer subdivision that the lease to Donald Pierce under Permit 364 had been terminated on August 9, 1996, and the occupant had not entered into a valid lease and was in trespass and needed to contact the CRIT Attorney General to make arrangements to stay on the property lawfully. The notice mistakenly references Permit "363" rather than "364". (See Exhibit 19, September 1, 2010 Posted Notice Bottom Half Lot 15). Defendant Shaver, and others, did not comply.

33. Having remained on the Subject Property without entering into a new lease, on April 9, 2013, CRIT sent a letter to Defendant Shaver informing him that CRIT would "continue to pursue all available legal remedies against those who occupy the Tribes' land without paying rent and without the Tribes' permission. (See Exhibit 20, April 9, 2013 Letter from CRIT).

34. On May 31, 2016, the BIA sent two letters to Defendant Shaver demanding he vacate the Subject Property. One notice was posted on the top half of Lot 15 of the Rymer subdivision and the other notice was posted on the bottom

half of Lot 15 of the Rymer subdivision. He did not comply with the notices. (See Exhibit 21, May 31, 2016 Notice Permit 62; and Exhibit 22, May 31, 2016 Notice Permit 364).

35. The West Bank Homeowners' Association, on behalf of 29 individual trespassing tenants (including Defendant Shaver), appealed the BIA's May 31, 2016 decisions to the Interior Board of Indian Appeals ("IBIA"), declaring each individual in trespass of their respective permitted lands. *See West Bank Homeowners Ass'n v. Acting W. Reg'l Dir., Bureau of Indian Affs.*, 64 IBIA 82, 2017 WL 1192190 (IBIA Mar. 24, 2017). The IBA received notice of the appeal on September 12, 2016, nearly two months after the filing deadline of June 30, 2016. *Id.* at *1. On March 24, 2017, the IBIA dismissed West Bank's appeal as untimely. *Id.*

36. On information and belief, Defendant Shaver has been in continuous occupation of the Subject Property since at least 2000. Since then, tribal representatives have periodically observed and inspected the Subject Property, and they have noticed at all times that Defendant Shaver continues to illegally occupy the premises. For example, on or about February 4, 2019, Doug Bonamici, the Tribal Realty Officer, physically drove through the properties occupied by the remaining trespassers described in paragraph 32 above, including the Subject Property, and noticed that Defendant Shaver's automobile was present in the driveway, and that several lights were on inside the property. And more recently,

on or about April 3, 2023, Tribal representatives observed Defendant Shaver driving his red truck in the vicinity of the Subject Property and withdrawing to the confines of the Subject Property.

37. Defendant Shaver occupies the property without authority or permission. Defendant Shaver's use and occupation of the Subject Property has been and continues to be knowing, intentional, willful, and contrary to federal law and has deprived CRIT and the Plaintiff of the use and benefits it is entitled to on said property.

### C. Legal Basis for Claims against Defendant Shaver

38. The federal common law of trespass "generally comports with the Restatement of Torts," *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009), under which trespass is defined as "the intentional use of the property of another without authorization and without privilege," *United States v. Imperial Irr. Dist.*, 799 F. Supp. 1052, 1059 (S.D. Cal. 1992). Further, "[t]he intent required is simply an intent to be on the land." *Id*.

39. Under federal common law, remedies for trespass include declaratory relief, damages, and ejectment. *See United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994); *United States v. Torlaw Realty, Inc.*, 483 F. Supp. 2d 967, 973 (C.D. Cal. 2007), *aff'd*, 348 Fed. Appx. 213 (9th Cir. 2009). As stated by the United States Supreme Court, "that an action of ejectment

could be maintained on an Indian right to occupancy and use, is not open to question." *Marsh v. Brooks*, 49 U.S. 223, 232 (1850).

40. Moreover, residential leases on Indian land are governed, generally, by 25 C.F.R. Pt. 162. The Permits are residential leases and are thus governed by these regulations.

41. The BIA's leasing regulations define a trespass as "any unauthorized occupancy, use of, or action on any Indian land or Government land." 25 C.F.R. § 162.003 (2019).

42. Defendant Shaver is required to have a lease to occupy and use the properties on the Reservation. 25 C.F.R. § 162.005 (2022).

43. When a lessee remains in possession after a residential lease is terminated, the BIA may treat the unauthorized possession as a trespass and take action to recover possession and pursue any additional remedies under applicable law. 25 C.F.R. § 162.371 (2022).

**D.    Defendant Shaver is Currently Trespassing**

44. On August 9, 1996, the BIA terminated Permit 62 and Permit 364 pursuant to Article 18 of the permits, which states that if the "Permittee default in the payment of any . . . rent . . . when due . . . the Secretary . . . may declare this permit forfeited by giving Permittee written Notice thereof, and upon such forfeiture, Permittee shall have no further rights or interest hereunder . . . , and Permitter may . . . take possession of the permitted premises and all buildings and improvements

thereon, and may cast Permittee and all persons claiming under the permit from the premises."

45. BIA provided such notice by letter dated August 9, 1996 noting that the Permit was being terminated.

46. Despite being notified that Permit 62 and Permit 364 were terminated on August 9, 1996 by letters or posted notices dated September 1, 2010, April 9, 2013, and May 31, 2016, and that there was no valid lease for the Subject Property, Defendant Shaver has continuously occupied and refuses to vacate the Subject Property. Defendant Shaver entered the Subject Property in trespass, has never paid rent for the Subject Property, has continuously occupied the property without authorization or permission, and remains today on the Subject Property in trespass.

47. When a lessee or assign or occupant remains in possession after a residential lease is terminated, the BIA may treat the unauthorized possession as a trespass and take action to recover possession and pursue any additional remedies under applicable law. 25 CFR § 162.371 (governing residential leases); 25 CFR § 162.471 (governing business leases). Defendant Shaver is violating these regulations by continuing to occupy the Subject Property.

48. The circumstances detailed above and Defendant Shaver's related actions, as detailed in the above enumerated paragraphs, satisfy the regulatory and common law requisites of trespass and the United States is entitled to the requested relief.

49. Defendant Shaver has no ownership interest in the Subject Property whatsoever; Defendant Shaver and his predecessors recognized the Subject Property's trust status when leasing it from CRIT and by paying rent accordingly. Defendant Shaver does not now possess a valid lease or permit for the Subject Property. Therefore, Defendant Shaver's occupancy and use of the Subject Property constitutes trespass under federal common law and governing regulations.

## FIRST CAUSE OF ACTION
### (Trespass)

50. The United States realleges each of the preceding paragraphs as if fully set forth herein.

51. Since at least May 30, 2000, without authorization or permission and without legal right, Shaver has willfully occupied and used the Subject Property either in person physically occupying the Subject Property, and/or by failing to remove his personal property including a trailer home and other improvements and/or structures. As a result of Defendant Shaver's unauthorized and continuing unlawful occupation and use of the Subject Property, he has committed and is now continuing to commit a willful trespass on land owned by the United States in trust for the benefit of the Tribes.

52. As a direct and proximate result of his continuing willful trespass, Defendant Shaver has damaged and continues to damage the Tribes' trust property and the governmental interests of the United States and will continue to do so unless and until the trespass is remedied.

## SECOND CAUSE OF ACTION
### (Ejectment)

53. The United States realleges each of the preceding paragraphs as if fully set forth herein.

54. Since at least 2000, and without authorization and legal right, Defendant Shaver has willfully occupied and used the Subject Property. Despite being notified of the termination of past Permits by letters and notices, Defendant Shaver has not vacated the Subject Property.

55. As a direct and proximate result of his unauthorized and continuing illegal occupation and use, Defendant Shaver has prevented and continues to prevent CRIT from enjoying and using the Subject Property which the United States owns in trust for the benefit of the Tribes.

56. Defendant Shaver has defied, and continues to defy, the authority of the United States, acting through the BIA, to administer the Subject Property. Defendant Shaver has refused to comply with the BIA's repeated requests that Defendant Shaver cease and desist from their occupation and use of the Subject Property and remove all facilities and equipment from the Subject Property.

57. Defendant Shaver's continuing occupation and use of the Subject Property is unlawful and, as a direct and proximate result of that trespass, Defendant Shaver has damaged and continues to damage the Tribe's interests and the United States' governmental interests and will continue to do so unless and

until Defendant Shaver is ejected and Defendant Shaver's facilities and equipment are removed from the Subject Property.

## PRAYER FOR RELIEF

**WHEREFORE**, United States respectfully requests that the Court provide the following relief:

    a.    Declare pursuant to 28 U.S.C. §§ 2201, 2202 that Defendant Shaver's willful, unauthorized, and continuing occupation and use of the Subject Property, without the authorization of the Tribes and United States, constitutes a continuing trespass;

    b.    Enter a judgment for mesne profits or monetary damages caused by Defendant Shaver's willful, unauthorized, and continuing occupancy, use, and disturbance of the Subject Property going back six years and 90 days from the date of filing, including, without limitation, the fair rental value of the property, administrative costs, and the costs and expenses of restoring and remediating the damaged and degraded property;

    c.    Enter a judgment for pre- and post-judgment interest on all damages awarded from the date of filing of this Complaint until the Judgment is paid in full, as appropriate pursuant to California Civil Code § 3288;

    d.    Eject Defendant Shaver from the Subject Property;

    e.    Order Defendant Shaver to remove from the Subject Property any and all equipment, personal property, buildings, and other materials placed thereon by

them, and abate any damage caused to the Subject Property necessary to restore the property to its natural condition, or, in the alternative, authorize the United States to undertake these tasks, with all costs and expenses incurred by the United States to be paid by Defendant Shaver;

      f.    Award the United States all costs of suit to the maximum extent permissible; and

      g.    Grant such other and further relief as the Court deems just and proper.

DATED:  _11/3/2023_

Respectfully submitted,

TODD KIM
Assistant Attorney General

 /s/ Guss Guarino
GUSS GUARINO
Trial Attorney, CO Bar No. 21864
guss.guarino@usdoj.gov
LAURA BOYER
Trial Attorney, CO Bar No. 56764
laura.boyer@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section
999 18th St., South Terr. 370
Denver, CO 80202
TEL:  303-229-7256
FAX: 303-844-1350

OF COUNSEL

Dondrae Maiden
Michael Bianco
Shani N. Sumter
United States Department of the Interior
Office of the Solicitor
Indian Trust Litigation Office